IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

D.M.,                                  :
                                       :
        Plaintiff,                     :
                                       :
v.                                     :        CIVIL ACTION NO.
                                       :        1:13-CV-03565-RWS
TANYA CHATMAN, *et al.*,               :
                                       :
        Defendants.                    :

## ORDER

This case comes before the Court on Defendants Chatman, Howell, Hunt,

McMillian, Weeks, Wells, and Woodard's Motion for More Definite Statement

[12], Motion to Strike [12], and Motion to Dismiss [12]; Defendant Page's

Motion to Adopt [32]; Defendant Durham's Motion to Adopt [34]; and

Plaintiff's Motion to Exclude Portions of Defendants' Reply Brief or, in the

Alternative, for Leave to File Surreply [38].  After reviewing the record, and

with the benefit of oral argument, the Court enters the following Order.

### Background

This civil rights action arises out of severe abuse Plaintiff D.M. sustained

from March 2011 until July 2011 while a resident at the Eastman Youth

Development Campus ("Eastman" or "Eastman YDC") in Eastman, Georgia.

Plaintiff, a sixteen year-old boy at the time of these events, was physically and sexually abused by Reginald Patton and other residents of Eastman.  Plaintiff alleges Defendants—directors, supervisors, a corrections officer, and a behavioral health counselor—deprived him of his Eighth and Fourteenth Amendment constitutional rights by exhibiting deliberate indifference toward a substantial risk of serious harm at the chaotic and violent juvenile detention facility.

## I.    Eastman Youth Development Campus

In 1998 the Georgia Department of Juvenile Justice ("DJJ") was the subject of a U.S. Department of Justice investigation which found widespread constitutional violations resulting from inadequate supervision, an inadequate classification system to separate potential victims and attackers, low staffing, and inappropriate responses to suicide risks, including the placing of at-risk youths in solitary confinement.  (Compl., Dkt. [1] ¶¶ 28-44.)  In response to these findings, the U.S. Department of Justice and the DJJ drafted a binding Memorandum of Understanding ("MOU") to implement remedial measures at DJJ facilities.  (Id. ¶¶ 48-49.)  The DJJ was then monitored by an independent

AO 72A
(Rev.8/82)

monitor and the U.S. Department of Justice until it came into compliance with the MOU in 2009.  (Id. ¶¶ 69-70.)

Plaintiff alleges that once monitoring under the MOU ended, management of DJJ facilities, including the Eastman YDC, slipped into disarray.  Due to the DJJ's failure to set adequate guard-to-resident ratios, the number of resident-on-resident physical and sexual assaults rose.  (Id. ¶¶ 72-81.)  At Eastman, for example, the MOU required one guard for every sixteen residents.  (Id. ¶ 84.)  Yet Plaintiff alleges that at the time of his abuse, Eastman instead had a ratio closer to one guard for every thirty-two residents.  (Id. ¶ 87.) The Eastman facility also fails to classify and segregate its residents to ensure their safety.  (Id. ¶ 108.)  As a result, physical and sexual assaults have occurred almost daily since 2009.  (Id. ¶ 88.)  From January 2011 to April 2011, three riots broke out.  (Id. ¶¶ 95-101.)  One riot involved sixty youths who set bed linens and trash on fire, requiring the response of five local law enforcement agencies.  (Id. ¶¶ 95-98.)  In each riot, guards were attacked, including one who suffered a broken nose while another had her teeth pushed in after being struck in the face.  (Id. ¶¶ 97-103.)

3

In addition, Plaintiff points to two audits revealing alleged unconstitutional conditions at the Eastman YDC.  An August 2010 audit found, among other things, that Eastman residents were not being classified or housed appropriately based on their age, offense, and dangerousness to other residents. (Id. ¶ 119.)  A November 2011 audit reached similar conclusions and further found that officials were not properly monitoring sexual offenders at Eastman. (Id. ¶¶ 125-26.)

## II.   Plaintiff's Abuse at Eastman

Plaintiff was transferred to Eastman on March 18, 2011, and was a resident there for approximately three months.  (Id. ¶¶ 127-28.)  Shortly after his arrival, Plaintiff was placed in resident area D-4.  (Id. ¶ 140.)  In early April, he was assaulted by four or five other residents in his cell after a juvenile corrections officer ("JCO") left the resident area door open, allowing the attack to take place.  (Id. ¶¶ 141-43.)  Several days later, while Plaintiff and his dorm-mates were being escorted by a single JCO to the dining hall, Plaintiff was again attacked by several residents.  (Id. ¶ 146-47.)  His attackers beat him and choked him until he became unconscious.  (Id. ¶ 148.)  Plaintiff then reported these attacks to Defendant Tanya Chatman, a mental health counselor at

AO 72A
(Rev.8/82)

Eastman, as well as to Defendants Director Fran Wells and Captain Alonzo McMillian.  (Id. ¶ 149.)  Plaintiff was then placed in isolation for approximately two weeks for his protection.  (Id. ¶ 151.)

Residents placed in isolation were held in a cell for twenty-three hours per day.  (Id. ¶ 134.)  Plaintiff was permitted one hour of recreation by himself in an eight by eight foot cage but was not allowed to attend school or have contact with others while in isolation.  (Id. ¶¶ 135-36.)

Upon his release from isolation, Plaintiff was placed in dorm area F-3.  (Id. ¶ 152.)  In that dorm, three residents beat him while the guard on duty watched and failed to intervene.  (Id. ¶ 154.)  The guard told Plaintiff to lie about the attack.  (Id. ¶ 156.)  Plaintiff spoke to Chatman, who sent him to the medical unit because the cut over his eye would not stop bleeding.  (Id. ¶ 157.)  After receiving five stitches, Plaintiff returned to dorm area F-3.  (Id. ¶ 160.)  His attackers were not disciplined.  (Id. ¶ 159.)  Later, a resident attacked Plaintiff and tried to take his shoes.  (Id. ¶ 161.)  Plaintiff resisted, and another resident came up from behind and put him in a choke hold, choking him unconscious.  (Id. ¶¶ 162-63.)  Meanwhile, two guards on duty failed to

AO 72A
(Rev.8/82)

intervene.  (Id. ¶ 164.)  Plaintiff was then placed back in isolation for several

days.  (Id. ¶ 165.)

When Plaintiff was released, he was placed in dorm area F-1, where

another resident, an older youth named Reginald Patton, also lived.  (Id. ¶ 167.)

Plaintiff alleges that Patton was known to Defendants as a violent sexual

predator.  (Id. ¶ 168.)  In fact, Patton had been designated as a sexual predator

at Eastman.  (Id. ¶ 169.)  One resident had informed Defendant Christopher

Durham, a JCO, that Patton was sexually assaulting residents at Eastman.  (Id. ¶

170.)  Plaintiff states that all Defendants knew of Patton's violent sexual

behavior but still placed Plaintiff and other residents in the same dorm area with

him.  (Id. ¶ 171.)

One day, Patton attacked Plaintiff in his cell.  Patton beat him, pulled his

pants down, and violently groped his penis.  (Id. ¶¶ 172-73.)  Plaintiff fought

off Patton and fled to another area of the dorm, but Patton pursued Plaintiff with

eight or nine other residents and cornered him.  (Id. ¶ 174-75.)  The attackers

beat Plaintiff, held him down, stripped off his pants, and repeatedly struck his

buttocks so that his buttocks muscles would relax.  (Id. ¶ 176-77.)  Patton then

attempted to penetrate Plaintiff with his penis.  (Id. ¶ 178.)  Although Plaintiff

6

fought back violently, he was brutally beaten.  (Id. ¶ 179.)  At the time of this attack, the dorm was staffed with only one JCO.  (Id. ¶ 180.)

Following the attack, Plaintiff was placed in isolation for three weeks. (Id. ¶ 181-82.)  While he was in solitary confinement, Plaintiff attempted to commit suicide by placing a plastic bag over his head and trying to swallow part of a pencil.  (Id. ¶ 183.)  A JCO found Plaintiff unresponsive in his cell with saliva running out of his mouth.  (Id. ¶ 184.)  Emergency medical personnel transported him to a local hospital for treatment, and after receiving treatment, Plaintiff returned to Eastman and was placed back in isolation.  (Id. ¶¶ 185-86.) Plaintiff's attorney visited him and observed that he was engaging in self-mutilation and had cuts and bruises all over his body.  (Id. ¶ 188.)  The attorney wrote a letter to Defendant Amy Howell, the DJJ Commissioner, demanding that Plaintiff be moved, and finally secured his transfer to a facility in Augusta. (Id. ¶ 190.)  By that point, Plaintiff had been physically and sexually assaulted nine times.  (Id. ¶ 129.)

Plaintiff filed this action on October 29, 2013, pursuant to 42 U.S.C. § 1983 for violations of the Eighth and Fourteenth Amendments.  Plaintiff names eleven Defendants: Tanya Chatman, a mental-health counselor at Eastman;

Christopher Durham, a JCO at Eastman; Amy Howell, Commissioner of the

DJJ; Garland Hunt, former Commissioner of the DJJ; Alonzo McMillian,

Institutional Program Director at Eastman; Tracy Page, Assistant Director of

Eastman; Georgia Smith, former Director of Eastman; Frank Spearman,

Principal at Eastman; Todd Weeks, former Director of Eastman; Fran Wells,

Director of Eastman; and Ronnie Woodard, Director of Secure Campuses at the

DJJ.  All Defendants are sued in their individual capacities.

## Discussion

**I.      Motion to Dismiss and Motion for a More Definite Statement Standard**[1]

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a

"short and plain statement of the claim showing that the pleader is entitled to

relief."  While this pleading standard does not require "detailed factual

allegations," mere labels and conclusions or "a formulaic recitation of the

elements of a cause of action will not do."  Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In

order to withstand a motion to dismiss, "a complaint must contain sufficient

---

[1]As a preliminary matter, Defendant Page's Motion to Adopt [32] and
Defendant Durham's Motion to Adopt [34] are hereby **GRANTED**.

8

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).  A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged.  Id.

"At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).  However, the same does not apply to legal conclusions set forth in the complaint.  See Iqbal, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  Furthermore, the court does not "accept as true a legal conclusion couched as a factual allegation."  Twombly, 550 U.S. at 555.

Furthermore, "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."  FED. R. CIV. P. 12(e).  When a plaintiff alleges multiple claims against multiple defendants, a more definite statement "will present each claim for relief in a separate count, as required by Rule 10(b), and with such clarity and precision that the

defendant[s] will be able to discern what the plaintiff is claiming and to frame a responsive pleading." Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll., 77 F.3d 364, 366 (11th Cir. 1996) (footnote omitted).

## III.   Analysis

Plaintiff alleges that Defendants violated his constitutional rights under the Eighth and Fourteenth Amendments by showing deliberate indifference toward a substantial risk of harm created by Defendants' (1) failure to provide an adequate number of guards at Eastman (Count I); (2) improper segregation of dangerous residents and potential victims (Count II); (3) failure to protect Plaintiff from Reginald Patton (Count III); (4) isolating Plaintiff for extended periods of time after he was subject to physical and sexual abuse and after a suicide attempt (Count IV); and (5) failure to take action against various patterns and practices of JCOs, such as allowing residents to engage in physical altercations, instigating physical altercations, failing to report abuse, and encouraging residents not to report abuse (Count V).

Defendants fall into three categories: (1) supervisors at the DJJ level (Howell, Hunt, and Woodard); (2) supervisors at Eastman (McMillian, Page, Smith, Spearman, Weeks, and Wells); and (3) non-supervisors at Eastman

(Durham and Chatman).  Plaintiff asserts Counts I and II against the supervisory Defendants only; Count III against all Defendants; and Counts IV and V against all Defendants except Durham, the JCO.

Defendants argue that Plaintiff's allegations are conclusory and fail to provide "any clarity as to which [D]efendant is presumed to be in possession of" knowledge about the conditions creating a substantial risk to Plaintiff, "when or how that knowledge was acquired, or any other factual basis that would support the conclusion that any particular Defendant could be presumed to be charged with that knowledge."  (Defs.' Br., Dkt. [12-1] at 10.) Accordingly, Defendants move for a more definite statement.  Moreover, Defendants argue that Plaintiff fails to state a claim and that Defendants are entitled to qualified immunity.

The Court finds that Counts I, II, III, and V are not subject to dismissal at this time.  After reviewing Plaintiff's allegations and entertaining oral argument, however, the Court finds that Count IV concerning Defendants' practice of placing Plaintiff in protective isolation following physical and sexual assaults is subject to dismissal on the basis of qualified immunity.

AO 72A
(Rev.8/82)

A.      Count IV: Placement of Plaintiff in Isolation

1.      *Qualified Immunity*

The doctrine of qualified immunity protects government officials performing discretionary functions from being sued in their individual capacities.  Wilson v. Layne, 526 U.S. 603, 609 (1999).  Officials are shielded "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority."  Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003).  Once the government official has satisfied this initial burden, the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity.  Id. at 1358.  As a threshold matter, the Court finds that Defendants were all acting within their discretionary authority both in supervising the DJJ and Eastman, and in guarding and counseling residents.

Next, whether an official is entitled to qualified immunity is determined by a two-step inquiry.  One inquiry is "whether the plaintiff's allegations, if true, establish a constitutional violation."  Barnett v. City of Florence, 409 F.

12

App'x 266, 270 (11th Cir. 2010) (citing Hope v. Pelzer, 536 U.S. 730, 736

(2002)).  "If the facts, construed . . . in the light most favorable to the plaintiff,

show that a constitutional right has been violated, another inquiry is whether the

right violated was 'clearly established.' " Id. (citing Saucier v. Katz, 533 U.S.

194, 201 (2001)).  "Both elements of this test must be present for an official to

lose qualified immunity, and this two-pronged analysis may be done in

whatever order is deemed most appropriate for the case." Id. (citing Pearson v.

Callahan, 555 U.S. 223, 241 (2009)).

> 2.    *Deliberate-Indifference Standard*

Plaintiff alleges that Defendants placed him in isolation for weeks at a

time following his abuse even though they knew "that isolation has deleterious

effects on the mental health of residents and should be limited."  (Compl., Dkt.

[1] ¶ 235.)  To show that such isolation amounted to a constitutional violation,[2]

Plaintiff must show there was "deliberate indifference to serious medical

---

[2]It is unclear if Plaintiff was a pretrial detainee protected by the Fourteenth
Amendment, or was serving a sentence pursuant to a conviction, in which case the
Eighth Amendment applies.  The distinction is irrelevant for the purposes of
Plaintiff's deliberate-indifference claims, however, because the standard under both
amendments is the same.  See Hamm v. DeKalb County, 774 F.2d 1567, 1574 (11th
Cir. 1985).

13

needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).  The analysis includes an

objective and a subjective component.  "First, a plaintiff must set forth evidence

of an objectively serious medical need.  Second, a plaintiff must prove that the

prison official acted with an attitude of 'deliberate indifference' to that serious

medical need." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal

quotations and citations omitted).

Deliberate indifference, the subjective component, is more than mere

negligence.  "An official acts with deliberate indifference when he knows that

an inmate is in serious need of medical care, but he fails or refuses to obtain

medical treatment for the inmate." Farrow, 320 F.3d at 1246 (quoting

Lancaster v. Monroe Cnty., 116 F.3d 1419, 1425 (11th Cir. 1997)).  However,

"[m]edical treatment violates the eight amendment only when it is 'so grossly

incompetent, inadequate, or excessive as to shock the conscience or to be

intolerable to fundamental fairness.'  Mere incidents of negligence or

malpractice do not rise to the level of constitutional violations." Harris v.

Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (citation omitted) (quoting

Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)).  Thus, deliberate

indifference has three components: "(1) subjective knowledge of a risk of

14

serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." <u>McElligott v. Foley</u>, 182 F.3d 1248, 1255 (11th Cir. 1999).

    3.    *Analysis*

Defendants contend that Chatman's placement of Plaintiff in isolation to protect him from other youths did not violate clearly established law. The Court need not decide whether Chatman violated Plaintiff's rights by placing him in isolation under the circumstances present here. Rather, even assuming that Chatman's actions did amount to a constitutional violation, the Court finds that such a violation was not clearly established at the time Plaintiff resided at the Eastman YDC.

A constitutional right is clearly established "only if its contours are 'sufficiently clear that a reasonable official would understand what he is doing violates that right.' " <u>Vaughan v. Cox</u>, 343 F.3d 1323, 1332 (11th Cir. 2003) (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)). While the fact patterns of prior cases used to show that a right is clearly established need not be "fundamentally similar" or even "materially similar," the salient question is whether the law at the time of the alleged violation gave officials "fair warning"

that their acts were unconstitutional.  Holmes v. Kucynda, 321 F.3d 1069, 1078 (11th Cir. 2003) (quoting Hope, 536 U.S. at 740).

A plaintiff can demonstrate that the contours of the right were clearly established in several ways.  First, a plaintiff may show that "a materially similar case has already been decided."  Mercado v. City of Orlando, 407 F.3d 1152, 1159 (11th Cir. 2005) (citing Harlow, 457 U.S. at 818).  Second, a plaintiff can point to "a broader, clearly established principle [that] should control the novel facts [of the] situation."  Id. (citing Hope, 536 U.S. at 741). Finally, the conduct involved in the case may "so obviously violate[ ] th[e] constitution that prior case law is unnecessary."  Id. (citing Lee v. Ferraro, 284 F.3d 1188, 1199 (11th Cir. 2002)).  Under controlling law, a plaintiff must carry his burden by looking to the law as interpreted at the time by the United States Supreme Court, the Eleventh Circuit, or the Georgia Supreme Court.  See id.

First, Plaintiff has not cited a materially similar case holding that placing a juvenile in protective isolation following an attack violates clearly established law.  Nor does the Court conclude that such conduct is such an obvious violation of the Constitution that prior case law is unnecessary.  Therefore, the

16

law was only clearly established if a broader, clearly established constitutional principle controls the novel facts of this case.

At oral argument, Plaintiff's counsel correctly pointed out that under the case law, " 'mental health needs are no less serious than physical needs' for the purposes of the Eight Amendment." Thomas v. Bryant, 614 F.3d 1288, 1312 (11th Cir. 2010) (quoting Gates v. Cook, 376 F.3d 323, 332 (5th Cir. 2004)). Indeed, "it is established that psychiatric needs can constitute serious medical needs and that the quality of psychiatric care one receives can be so substantial a deviation from accepted standards as to evidence deliberate indifference to those serious psychiatric needs." Steele v. Shah, 87 F.3d 1266, 1269 (11th Cir. 1996). In that regard, courts have held that discontinuing prescribed psychotropic medication "on the basis of one cursory interview and without having reviewed any medical records" could violate the Eighth Amendment. Id. at 1270. In another case, the Eleventh Circuit explained that when "prison personnel directly responsible for inmate care have knowledge that an inmate has attempted, or even threatened, suicide, their failure to take steps to prevent that inmate from committing suicide can amount to deliberate indifference." Greason v. Kemp, 891 F.2d 829, 835-36 (11th Cir. 1990). So, too, can the

17

failure to provide prisoners with psychological counseling after being raped.

See LaMarca v. Turner, 995 F.2d 1526, 1544 (11th Cir. 1993).

These cases, however, did not give Chatman fair warning that the decision to place Plaintiff in isolation would violate the Constitution.  In this case, Chatman used isolation not as a punitive measure but to protect Plaintiff from further brutality in an out-of-control juvenile detention center.  Thus, Chatman's decision did not exhibit a total lack of care like in other deliberate-indifference cases.

To be clear, the Court does not doubt that isolation exacerbates the devastating psychological effects of sexual violence.  But Chatman faced the dilemma of returning Plaintiff to the same dorm area where the attacks occurred, transferring Plaintiff to another dorm area where the conditions were no better, or placing Plaintiff in isolation where, if nothing else, Plaintiff would not be physically brutalized.  Confronted with such choices, the Court cannot say that no reasonable person would have chosen to place Plaintiff in isolation for his own protection.  Moreover, Plaintiff does not allege that Chatman denied him any psychological care at all.  And while Chatman and the other Defendants could have taken better measures to care for Plaintiff's physical and

psychological needs, it was not obvious at the time that their actions were "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Harris, 941 F.2d at 1505 (quoting Rogers, 792 F.2d at 1058); see also id. (noting that "incidents of negligence or malpractice do not rise to the level of constitutional violations"). The Court accordingly finds that Chatman did not have fair warning that putting Plaintiff in isolation would violate a clearly established right. Consequently, Chatman and the supervisory Defendants are entitled to qualified immunity on Count IV.

B.    Remaining Claims

As to Plaintiff's remaining claims contained in Counts I, II, III, and V, the Court hereby **GRANTS** Defendants' Motion for More Definite Statement [12]. For the reasons adduced at oral argument, the Court **ORDERS** Plaintiff to file, within twenty-one (21) days of the date of this Order, an Amended Complaint tying specific facts to specific Defendants and showing how the facts contained in the Complaint relate to Plaintiff's causes of action, including the causal connection between Defendants' alleged acts or omissions and Plaintiff's alleged constitutional deprivations.

19

Because Plaintiff will file an Amended Complaint, Defendants' Motion to Strike [12] and Plaintiff's Motion to Exclude Portions of Defendants' Reply Brief or, in the Alternative, for Leave to File Surreply [38] are **DENIED, as moot**.  Finally, Defendants' Motion to Dismiss [12] is **GRANTED** as to Count IV and **DENIED** as to all other counts, with the right to refile as to the other claims, at which point the Court will review the motion to dismiss under the facts as alleged in the Amended Complaint.

## Conclusion

For the foregoing reasons, Defendant Page's Motion to Adopt [32], Defendant Durham's Motion to Adopt [34], and Defendants' Motion for More Definite Statement [12] are **GRANTED**.  Defendants' Motion to Dismiss [12] is **GRANTED** as to Count IV and **DENIED** as to all other counts with right to refile.  Furthermore, Defendants' Motion to Strike [12] and Plaintiff's Motion to Exclude Portions of Defendants' Reply Brief or, in the Alternative, for Leave to File Surreply [38] are **DENIED, as moot**.

Finally, Plaintiff is **ORDERED** to file an Amended Complaint as set forth above within twenty-one (21) days of the date of this Order.

20

**SO ORDERED**, this  11th  day of August, 2014.


**RICHARD W. STORY**
United States District Judge

21